# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

United States of America,                                          Criminal No. 10-304 PJS/AJB

                                    Plaintiff,

v.                                                      **REPORT AND RECOMMENDATION**

(1)     Martin Basurto-Esquivel,
(2)     Martin Basurto, Jr.,
(4)     Patricio Cardoso-Sanchez,

                            Defendants.


            Thomas M. Hollenhorst, Esq., and Allan Slaughter, Esq., Assistant United States
                    Attorneys, for the plaintiff, United States of America;
            Mark D. Larsen, Esq., for defendant Martin Basurto-Esquivel;
            Douglas Olsen, Esq., for defendant Martin Basurto, Jr.; and
            James B. Sheehy, Esq., for defendant Patricio Cardoso-Sanchez.


        This action came on for hearing before the Court, Chief Magistrate Judge Arthur

J. Boylan, on January 3, 2010, at the U.S. Courthouse, 316 North Robert Street, St. Paul,

Minnesota  55101.  The Court issued an Order on Motions, filed January 10, 2011, therein

reserving defendants' motions to suppress wiretap evidence, motions to suppress search and

seizure evidence, and motion to suppress statements, as well as motions for severance, for

submission to the district court on report and recommendation.

        Based upon the file and documents contained therein, along with the

memorandums and arguments of counsel, the magistrate judge makes the following:

## FINDINGS

            **Wiretap Applications, Authorizations, and Procedures.**  On July 26, 2010, an

Assistant United States Attorney for the District of Minnesota submitted an application for an

order authorizing the interception of wire communications to United States District Court Judge Patrick J. Schiltz. The wiretap authorization was sought pursuant to 18 U.S.C. § 2518 and was requested as part of an FBI investigation into suspected drug distribution activities by specifically named individuals, including defendants in this action. Defendants and others were believed to be involved in various capacities in the importation and distribution of drugs, largely in the Twin Cities area. The wiretap application and order each recite the suspected statutory violations relating to the investigation. In addition, the application contains a description of the application procedures which have been followed pursuant to the requirements of 18 U.S.C. § 2516 and seeks permission to conduct telephone surveillance consistent with provisions of 18 U.S.C. §2518. The application further identifies the individual targets of the proposed surveillance and generally asserts the existence of probable cause as stated with particularity in an attached affidavit of DEA Special Agent Terrence W. Olstad.

The July 26, 2010, application (Hrg. Ex. 3) requested authorization to intercept calls to and from cellular telephone number 651-387-5055 (TT-3), a Sprint cell phone bearing electronic serial number 270113178315098400, a telephone number assigned to Martin Basurto, at a specified address in White Bear Lake, Minnesota. Authorization was granted by Judge Schiltz on July 26, 2010, and the Court's Order permitted interceptions for a period of 30 days commencing within 10 days or on the date interceptions begin, whichever is sooner. The Order further provided that wiretaps be conducted in a manner that minimized the interception of communications that are not criminal or not pertinent to the investigation, and that interim progress reports regarding intercepted calls be submitted to the Court on ten day intervals. Interceptions pursuant to the Order commenced on July 27, 2010, and surveillance was

terminated on August 25, 2010, at which time wiretap authorization under the initial Order lapsed.

Thereafter, the Assistant United States Attorney for the District of Minnesota submitted an application for renewal of interception of wire communications to United States District Court Chief Judge Michael J. Davis on August 31, 2010. (Hrg Ex. 4). The wiretap renewal order was requested on the basis of the same statutory authority and as part of the same investigation as the prior July 26, 2010, Order, and the application again asserts the existence of probable cause as stated with particularity in an attached affidavit of DEA Special Agent Terrence W. Olstad. The affidavit references and incorporates the prior affidavit that was submitted to Judge Schiltz and further describes probable cause evidence, including intercepted conversations that were obtained pursuant to the initial wiretap order. The renewal application identifies the same individuals as targets of the proposed renewed surveillance, though several target individuals are added.

The August 31, 2010, renewal application again requested authorization to intercept calls to and from cellular telephone number 651-387-5055, a Sprint cell phone bearing electronic serial number 270113178315098400 (TT-3), a telephone number assigned to Martin Basurto, at a specified address in White Bear Lake, Minnesota. Authorization was granted by Chief Judge Davis on August 31, 2010, and the Court's Order permitted interceptions for a period of 30 days commencing within 10 days or on the date interceptions begin, whichever is sooner. The Order further provided that be wiretaps be conducted in a manner that minimized the interception of communications not pertinent to the investigation and that interim progress reports containing descriptions and summaries of intercepted calls be submitted to the Court on

fifteen day intervals. Interceptions pursuant to the Order commenced on September 2, 2010, and surveillance was terminated on September 30, 2010, at which time wiretap authorization under the initial Order was allowed to lapse. The Order authorizing a wiretap on TT-3 was not extended beyond September 30, 2010.

Both of the above-described intercept applications were separately authorized by a specifically designated Deputy Assistant Attorney General in the Criminal Division of the United States Department of Justice. The interception applications requested wiretap permission only until attainment of the authorized objectives and in no event more than thirty days beyond the time of commencement. The target phone was not monitored in excess of the thirty day time limitation as prescribed by the respective Order Authorizing the Interception of Wire Communications and the renewal order. The applications described attainment objectives as the interception of communications which fully reveal the manner in which the target individuals and others unknown participate in the described offenses, and reveal the identities of co-conspirators, places of operation, and the nature of the conspiracy.

**Minimization.** Prior to commencing telephone interceptions in this investigation the monitoring agents were given instructions regarding rules and standards of minimization. Minimization procedures are intended to prevent monitoring of privileged communications and unnecessary monitoring of innocent conversations by requiring monitors to determine the discussion's relevance to the investigation within the first two minutes of the call. A minimization memorandum was prepared by the Assistant United States Attorney and each of the monitors was required to read the minimization memorandum and to sign an acknowledgment that the minimization memo was read.

**Alternative Investigative Techniques.**  Both of the affidavits of DEA Special

Agent Terrence Olstad that were submitted in support of wiretap applications described various

conventional investigative techniques which were used in the investigation prior to submitting

the application for wiretap authorization.  Investigation methods, information sources, and

incidents that were exploited and/or considered by the affiant and other investigators included

physical surveillance, search warrants, pen registers and toll records, mail covers, confidential

sources, undercover investigators, grand jury subpoenas, trash searches, cell phone

latitude/longitude data, and GPS tracking.  In addition, the August 31, 2010, surveillance

renewal affidavit cited subsequent investigative efforts, including the prior Title III wiretap in

this case.  The conventional techniques had not proven to be entirely successful with regard to

identifying all participants and locations used by the suspected drug distribution organization.  In

particular, certain intercepted participants were not fully identified and drug stash locations were

not determined; California-based methamphetamine suppliers and Minnesota customers were not

identified; and the exact manner and means in which drugs were transported was not established.

Substantial physical surveillance was successfully conducted, but did not allow the immediate

physical presence necessary to discover details regarding identities, locations and the subjects of

meetings, and was hampered by counter-surveillance measures.  Search warrants were unlikely

to reveal substantial evidence regarding interstate drug sources and couriers and premature

execution carried the risk of jeopardizing the entire investigation.  Pen registers and toll records

had proven very useful in establishing communications patterns, but did not reveal the substance

of conversations.  Use of informants and an undercover agent had yielded useful information, but

a principal CS was now incarcerated and a second informant, as well as the undercover agent,

had only limited, low-level access to members of the suspected drug organization. Latitude/longitude data had proven to be helpful in tracking movements of the possessor of the target telephone, and to facilitate physical surveillance, but was not sufficient as a means for determining the purposes of such movements and attaining the goals of the investigation, and it did not appear likely that GPS tracking would be any more productive than the latitude/longitude tracking. Finally, the results of the electronic surveillance that was conducted pursuant to the first wiretap authorization order had revealed valuable evidence, including the identities of additional participants in the suspected crime organization and the locations of stash houses and meeting places, but the surveillance had not yet fully revealed identities all of the participants and locations or the means of drug transportation.

**2007 Wiretap Authorization**

On April 20, 2007, United States District Court Judge Michael J. Davis issued an Order Authorizing Interception of Wire Communications upon application by an Assistant United States Attorney for the District of Minnesota. (Hrg. Ex. 8 and 9). The wiretap authorization was sought pursuant to 18 U.S.C. § 2518 and was requested as part of a DEA investigation into suspected drug distribution activities by specifically named individuals, including defendants in this matter. Surveillance pursuant to the authorization commenced April 20, 2007, and was terminated on May 12, 2007.

No prosecutions of defendants in this case were initiated as a direct result of evidence obtained in the course of the 2007 electronic surveillance. However, the Affidavit of Terrence Olstad that was submitted in support of the initial wiretap authorization request in this matter noted the occurrence of the 2007 electronic surveillance, and stated that the interceptions

were halted because the target individual had given the target cell phone to an unknown juvenile. It was decided that charges would not be brought because the incriminating evidence that was obtained related only to lower level members of the suspected drug organization, and officials did not want to risk interference with future investigations of higher members of the organization. The Affidavits of Terrence Olstad accompanying the 2010 electronic surveillance applications do not explicitly reference any evidence or information obtained as a result of the 2007 wiretap.

**Search Warrants**

Separate search warrants were issued on October 15, 2010, by United States Magistrate Judge Jeffrey H. Keyes, authorizing the searches of three locations. The three warrants were all based upon the identical applications and affidavits submitted by DEA Special Agent Terrence W. Olstad. One of the warrants authorized the search of a two-car detached garage located on a lot at a particularly stated address in White Bear Lake, Minnesota, further identified in the affidavit as property owned by Martin Basurto (Hrg. Ex. 5); a second warrant authorized the search of a particular premises in White Bear Lake, Minnesota, further identified in the affidavit as the residence of Esquivel (Hrg. Ex. 6); and the third warrant authorized the search of a specified apartment unit in West Saint Paul, Minnesota, further identified in the affidavit as the residence of Martin Basurto (Hrg. Ex. 7).

Each application and the respective warrant contained the same description of items to be seized, including methamphetamine and other controlled substances, books and records relating to drug distribution, addresses and telephone numbers, financial documents relating to concealment of assets, electronic equipment and devices, money and valuables,

photographs, drug packaging materials, documents indicating occupancy, firearms, and locked containers. The affidavits of Special Agent Olstad stated evidence and information intended to establish probable cause for issuance of each of the warrants, including information provided by a confidential source (CS), evidence obtained through controlled drug buys, evidence obtained by traditional surveillance, information obtained through use of an undercover officer (UC), evidence obtained by execution of search warrants authorizing disclosure of cell phone latitude/longitude data, and evidence obtained by electronic surveillance.

**Statement**

        **Martin Busarto, Jr.** DEA Special Agent Olstad executed a warrant to arrest defendant Martin Busarto, Jr. at an apartment in Eagan, Minnesota, on October 21, 2010, at approximately 10:30 a.m. Mr. Busarto answered the door and Special Agent Olstad promptly arrested him. The agent read the <u>Miranda</u> advisory to the defendant in English from a preprinted card as they sat at a kitchen table. Busarto stated that he understood his rights as given to him, including the right to remain silent and the right to a court-appointed attorney before questioning. He agreed to speak with the agent, but stated that he wanted any discussions to take place away from his girlfriend, who was also at the residence. Special Agent Olstad then brought Mr. Busarto to a vehicle where a custodial interview was conducted. Officer Melton was also present in the vehicle. The defendant voluntarily made statements to the officers. He was not subjected to coercion or promises made to induce cooperation, and he was not under the influence of drugs or alcohol. The interview lasted approximately five minutes and was terminated by Special Agent Olstad. The defendant made no request for the assistance of an attorney and did not ask that the interview cease. The interview was not recorded.

Based upon the foregoing Findings, the magistrate judge makes the following:

## CONCLUSIONS

**Severance**

   **Severance.** Severance of defendants is not required in this matter. Each of the defendants has moved for severance of defendants in this matter and defendants Martin Basurto-Esquivel and Martin Basurto, Jr. have also moved specifically for severance of Count 12 of the indictment, alleging a firearms possession charge against Basurto-Esquivel only. Fed. R. Crim. P. 8(a) permits joinder of offenses in the same indictment if the offenses are of the same or similar character or are based on the same act or transaction or are based on acts connected together or constituting parts of a common scheme or plan. The propriety of joinder under Rule 8(a) is a question of law, though relief from a legally permissible joinder may be obtained as an exercise of discretion on motion for severance due to prejudice, pursuant to Fed. R. Crim. P. 14. United States v. Rodgers, 732 F.2d 625, 628-29 (8th Cir. 1984). Availability of the Rule 14 remedy permits broad construction of Rule 8 in favor of initial joinder. Id. at 629. With respect to joinder of defendants in this instance, it has not been shown that severance of co-defendants is necessary to avoid risk of compromising any specific trial right to which each of them is entitled or is necessary to prevent the jury from making an unreliable judgment as to the guilt or innocence of each of them.

   The individual co-defendants in this matter have been indicted for conspiring with one another to distribute methamphetamine. Two or more defendants may be charged in the same indictment if they are alleged to have participated in the same transaction or series of incidents constituting an offense or offenses. Fed. R. Crim. P. 8(b). "There is a preference in the

federal system for joint trials of defendants who are indicted together." Zafiro v. United States, 506 U.S. 534, 537, 113 S.Ct. 933, 937 (1993). Typically, persons charged with conspiracy should be tried together and it will rarely be improper for co-conspirators to be tried together. United States v. Kindle, 925 F.2d 272, 277 (8th Cir. 1991); United States v. Stephenson, 924 F.2d 753, 761 (8th Cir. 1991). Nonetheless, the court may grant a severance of defendants if it appears that a defendant is prejudiced by a joinder at trial. Fed. R. Crim. P. 14. A court "should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro, 506 U.S. at 539, 113 S.Ct. at 938.

Each of the moving defendants generally asserts prejudice resulting from the introduction of evidence against one of them that would be inadmissible against the other in a separate trial. Each defendant also asserts improper joinder and difficulty for the jury in distinguishing between the alleged acts of the defendants. No defendant describes grounds for severance with significant factual particularity.

The counts and defendants in this case were properly joined under Rule 8 and there is no requirement for severance based upon misjoinder. Rule 14 severance is a remedy for prejudice that may develop during trial, and the decision on a Rule 14 motion for severance lies within the sound discretion of the trial court. United States v. Robaina, 39 F.3d 858, 861 (8th Cir. 1994). The record, including testimony produced at hearing, offers no compelling indication as to how any defendant is prejudiced by joinder with other the defendants in this case, particularly to the extent necessary to overcome the preference for joinder of defendants in conspiracy cases. Specifically, it is not patently apparent that a jury would be unable to

distinguish and apply the evidence relating to one defendant from evidence relating to another defendant, and there has not been persuasive particularized showing that a joined trial will prevent introduction of exculpatory evidence or will allow introduction of otherwise inadmissible evidence with respect to any defendant. Joinder of defendants in this case was not improper and severance is not required in light of the current record. See United States v. Wadena, 152 F.3d 831, 847-50 (8th Cir. 1998). Similarly, with respect to the Count 12 charge against Martin Basurto-Esquivel alleging unlawful possession of a firearm by an illegal alien, the courts find no immediate issue regarding introduction of evidence based upon his presently speculative decision to testify one way or another on the separate drug and firearms charges. The court further concludes that with the assistance of instructions from the trial court the jury will be fully able to distinguish the acts of each defendant from the acts of other defendants so as to avoid prejudice to other defendants based upon the firearm count against Mr. Basurto-Esquivel, and the jury will further be able to set aside personal concerns about connections between illegal aliens, drugs, and firearms. Severance is a remedy that can be provided at the time of trial if appropriate under the circumstances. At present, there has been no showing to support a recommendation for severance of defendants or counts.

**Search Warrants**

Evidence seized pursuant to separate warrants to search a two-car detached garage located on a lot at a particularly stated address in White Bear Lake, Minnesota, further identified in the affidavit as property owned by Martin Basurto. (Hrg. Ex. 5); a particular premises in White Bear Lake, Minnesota, further identified in the affidavit as the residence of Esquivel  (Hrg. Ex. 6); and a specified apartment unit in West Saint Paul, Minnesota, further

identified in the affidavit as the residence of Martin Basurto, was not unlawfully obtained in violation of the constitutional rights of a defendant in this action. The three search warrants were issued on October 15, 2010, and were based upon sufficient probable cause as determined by United States Magistrate Judge Jeffrey H. Keyes. Each of the applications was accompanied by the affidavit of DEA Special Agent Terrence Olstad, and each of the affidavits contains sufficient probable cause to support issuance of the respective warrant to search the specified location.

Defendant Martin Basurto-Esquivel argues that there was not sufficient evidence to establish probable cause for issuance of the warrant to search a particular premises in White Bear Lake (Hrg. Ex. 6) because the supporting affidavit did not state concrete evidence regarding his involvement in drug distribution activities, but rather, the affiant relied on opinion and speculation. Although many of the evidentiary statements in the Affidavit of Terrence Olstad were qualified as being based upon "training and experience," the court is persuaded that the affiant's interpretation of intercepted coded language in reference to monetary units and drug types and amounts, was wholly justified in the context of the intercepted discussions and the investigation in this case so as to establish probable cause to believe Basurto-Esquivel was involved in a drug conspiracy. Moreover, intercepted calls involving cellular phones subscribed to by persons who identified the subject address as their residence, indicated that drug money was transferred at the residence, thereby establishing the necessary nexus between the search warrant location and unlawful activity.

Defendant Martin Basurto, Jr. likewise contends that the affidavit supporting the warrant to search his West St. Paul apartment (Hrg. Ex. 7) did not establish a nexus between the

residence and drug activity and relies too heavily on conclusory statements and opinion. This argument fails. The affidavit references direct observations of Martin Basurto and co-defendant Keener engaged in drug transactions and thereafter going into the apartment in November 2009. More recently, on September 11, 2010, an conversation was intercepted which allowed the reasonable inference that Martin Basurto was counting drug money at the residence, and on October 6, 2010, Keener was observed going into the apartment building immediately after discussing a substantial drug purchase with an undercover agent. The affidavit contains direct and timely evidence to establish a nexus between drug activity and the West St. Paul location. Suppression of evidence obtained pursuant to the above-identified warrants to search and seize evidence is not required.

   **Good Faith.** The warrants issued by the United States Magistrate Judge on October 15, 2010, were executed by officers having a objective good faith reliance on the validity of each of the warrants, and the searches were lawful. There is no evidence that the issuing judge was intentionally or recklessly misled by false information in an affidavit; there is no suggestion that the judicial role was completely abandoned by the issuing judge; the indicia of probable cause in the affidavit is not insignificant; and the warrant is not facially deficient. United States v. Hessman, 369 F.3d 1016, 1020 (2004)(citing United States v. Leon, 468 U.S. 897, 923, 104 S.Ct. 3405 (1984). The search warrants in this matter were lawfully issued and executed and there is no requirement for suppression of evidence seized pursuant to the warrant. See also United States v. Carpenter, 341 F.3d 666, 671,670 (8th Cir. 2003)(affidavit not so lacking in indicia of a nexus between drugs and residence as to render belief in existence of probable cause entirely unreasonable).

**Statements**

        **Martin Busarto, Jr.**  Defendant Busarto's interview statement on October 21, 2010, conducted in a vehicle outside his apartment residence in Eagan, Minnesota, in connection with the execution of a warrant for Mr. Busarto's arrest, was lawfully obtained.  Defendant was advised of his constitutional rights, and he acknowledged and voluntarily waived those rights, including the right to remain silent, the right to confer with counsel and to have an attorney present, the right to stop answering questions, and the right to appointed counsel.  The rights were provided to him in English, defendant was not subjected to threats, coercion, or promises by agents present at the interview, and he did not ask that questioning cease.  Suppression of defendant Martin Busarto, Jr.'s statements is not required.

**Wiretap Procedures**

        Defendants have not made the required showing that the applications for electronic surveillance in this case were substantively deficient, that the wiretap surveillance as conducted in this instance did not satisfy the procedural requirements set forth at 18 U.S.C. 2518, that electronic surveillance was unnecessary in light of evidence already obtained and the availability of other investigative techniques, or that the warrant was not supported by probable cause.  Evidence obtained either directly or derivatively through interception of wire or oral communications should not be suppressed.

        An application to engage in electronic surveillance must be reviewed in a practical and common sense fashion and broad discretion must be accorded to the decision to authorize a wiretap.  United States v. Garcia, 785 F.2d 214, 221 (8th Cir. 1986).  The

information in the supporting affidavit must present a truthful showing of probable cause, United States v. Falls, 34 F.2d 674, 681 (8th Cir. 1994)(citing Franks v. Delaware, 438 U.S. 154, 164-65, 98 S.Ct. 2674, 2680-81 (1978)). A defendant has the burden of showing that wiretapping was unlawfully obtained or used. Garcia at 222. An application may be challenged through a showing that facts included in the affidavit are false or were made with reckless disregard for the truth, or that facts were omitted with intent to mislead or in reckless disregard to the whether the affidavit is misleading. Falls at 681. Defendants have not shown that the wiretap applications and affidavits in this matter contain any untruthful probable cause information or that material was otherwise presented or omitted with the intent or the effect of misleading the issuing judge, particularly with respect to the success or failure of alternative investigatory tools. Furthermore, defendants offer no substantive argument whatsoever as to the sufficiency of probable cause evidence to support issuance of the warrant.

**Necessity.** In addition to providing a complete statement of facts and circumstances relating to the alleged offenses, the persons involved, and the type of communications sought to be intercepted, 18 U.S.C. § 2518(1)(b), a wiretap application must contain information which will justify a determination that conventional investigative techniques have been tried and have either failed or reasonably appear to be unlikely to succeed or are too dangerous. 18 U.S.C. § 2518(1) (c) and (3) (c). United States v. Shaw, 94 F.3d 438, 441 (8th Cir. 1995). This "necessity" requirement is imposed to ensure that wiretaps are not routinely employed at the initial step in the investigation and does not dictate that all possible investigative techniques be attempted before seeking wiretap authorization. Id. at 441 (citing United States v. Macklin, 902 F.2d 1320, 1326 (8th Cir. 1990)).

The separate affidavits of DEA Special Agent Terrence Olstad, submitted in support of wiretap applications, (Hrg. Ex. 3 and 4), each provide a thorough description of other investigative methods that had already been used or considered. The affidavits discuss the use of confidential sources and undercover agents, physical surveillance procedures, pen registers and toll records, latitude/longitude and GPS tracking, search warrants, and trash searches, and the renewal affidavit discusses the results of the prior wiretap as well. In addition, the affidavits describe the successes and limitations of the various investigative techniques under the circumstances of this case, including the difficulties in achieving an immediate physical presence necessary to see or hear illegal activities actually taking place and to obtain detailed information. The wiretap was clearly not the initial step in the investigation in this case and the application and authorization are not in conflict with the "necessity" requirement. United States v. Nguyen, 46 F.3d 781, 783 (8th Cir. 1995). The government met its statutory obligation with respect to a statement of necessity and there is no showing that relevant affidavit statements were misleading.

**Attainment.** The interception application in this matter requested wiretap authorization until communications interceptions "reveal the manner in which the named violators and others unknown participate in the specified offenses and reveal the identities of their co-conspirators, places of operation, and nature of the conspiracy," (Appl. for Interception, Hrg. Ex. 3, page 5; Ex. 4, page 5). Where the goals of an investigation are to learn the extent of the conspiracy and the identity of co-conspirators, a wiretap may lawfully continue until the government accomplishes those goals or the 30-day period of authorization expires. United States v. Brown, 941 F.3d 656, 659 (8th Cir. 1991). While the government may have had

substantial success in this investigation, it had not determined the identity or location of all co-conspirators and did not continue surveillance beyond the time of attainment or beyond the authorized 30 days.  Suppression of wiretap evidence is not justified by the government's failure to cease electronic surveillance upon attainment of the investigation objectives.

**Minimization.**  18 U.S.C. § 2518(5) requires the government to conduct electronic surveillance in a manner that will minimize the interception of communications that are not otherwise subject to interception.  Whether minimization efforts were properly conducted is a test of objective reasonableness under the facts and circumstances of the case.  United States v. Padilla-Pena, 129 F.3d 457, 462 (8th Cir. 1997)(citing Scott v. United States, 436 U.S. 128, 137-38, 98 S.Ct. 1717, 1723-24 (1978)).  Occasional interception of nonpertinent communications is not forbidden by 18 U.S.C. § 2518(5) and does not warrant suppression unless particular circumstances of the case otherwise justify this severe sanction.  Padilla-Pena at 464.  In a case involving a wide-ranging conspiracy with several participants, even an experienced monitor might experience difficulties in determining the relevancy of uncompleted calls.  This is true whether calls are evaluated contemporaneously or after-the-fact.  Padilla-Pena at 464, citing Scott, 98 S.Ct. at 1724-25.

Each of the monitors assigned to the surveillance in this case was provided instructions on the rules of minimization by an Assistant United States Attorney.  A minimization memorandum was prepared and reviewed by monitoring agents.  Monitors were instructed to terminate surveillance immediately upon determination that the communication was privileged or appeared unrelated to the investigation.  This determination was to be made within the first two minutes of the call.  Monitors were to refrain from listening in on minimized calls

but were permitted to conduct periodic spot checks to re-evaluate the nature and course of extended conversations. Monitors were required to maintain contemporaneous logs indicating the time and duration of interceptions. Their determinations on whether to minimize were to be based upon written guidelines which described circumstances requiring minimization or various levels of continued monitoring based upon identification of conversation participants, the subject matter of the communications, and the use of code words and slang terminology.

**Probable Cause.** Suppression of wiretap evidence on grounds that the order authorizing electronic surveillance was not supported by probable cause is not required. The affidavit of DEA Special Agent Olstad states sufficient evidence to establish probable cause, including evidence obtained from an identified cooperating individual in 2004 and 2005, information provided by a DEA confidential source (CS) in 2009 and 2010, consensually monitored telephone conversations between the CS and a target individual, telephone toll record and pen register analysis, undercover drug transactions, physical surveillance, and latitude/longitude tracking data. While the affidavit is replete with evidence qualified by an express indication that the particular statement was the affiant's belief based upon inferences and interpretation of coded language, the affiant's belief's are entitled to evidentiary weight under circumstances in which they are wholly consistent with information obtained through the CS, the undercover agent, tracking information and phone call patterns, and are further based upon the affiant's experience, training and first-hand familiarity with the case.

**Good Faith.** The warrants authorizing interception of telephone communications issued on July 26, 2010 (Hrg. Ex. 3) and August 31, 2010 (Hrg. Ex. 4) were executed by officers having a objective good faith reliance on the validity of each of the warrants, and the wiretap

surveillance with respect to the target telephone was lawful.  The good faith exception under

United States v. Leon, 468 U.S. 897, 923, 104 S.Ct. 3405 (1984) applies to wiretap authorization

orders as well as to traditional search and seizure warrants.  United States v. Moore, 41 F.3d 370,

376  (8th Cir. 1994).  There is no evidence that the issuing judge was intentionally or recklessly

misled by false information in any of the separate supporting affidavits of Terrence Olstad; there

is no suggestion that the judicial role was completely abandoned by the issuing judge; the indicia

of probable cause in each of the affidavits is not insignificant; and the warrants are not facially

deficient.  United States v. Hessman, 369 F.3d 1016, 1020  (8th Cir. 2004)(citing United States

v. Leon, 468 U.S. 897, 923, 104 S.Ct. 3405 (1984).  The wiretap warrants were lawfully issued

and executed and therefore suppression of evidence seized pursuant to the warrants is not

required.  Alternatively, both of the wiretap warrants were executed in good faith reliance on

their lawful issuance and execution and suppression is not required on good faith grounds as

well.

   Based upon the foregoing Findings and Conclusions, the Magistrate Judge makes

the following:

## RECOMMENDATION

   It is hereby recommended that:

   1.  Defendant (4) Patricio Cardoso-Sanchez 's Motion to Suppress Wiretap

Evidence and Evidence Derived therefrom be **denied** [Docket No. 64];

   2.  Defendant (4) Patricio Cardoso-Sanchez 's Motion to Suppress Evidence

Obtained as a Result of Search and Seizure be **denied** [Docket No. 69];

   3.  Defendant (4) Patricio Cardoso-Sanchez's  Motion for Severance be **denied**

[Docket No. 71];

      4.  Defendant (1) Martin Basurto-Esquivel's Motion for Suppression of Evidence Derived from Wiretaps be **denied** [Docket No. 75];

      5.  Defendant (1) Martin Basurto-Esquivel's  Motion for Severance of Defendants be **denied** [Docket No. 83];

      6.  Defendant (1) Martin Basurto-Esquivel's  Motion for Severance of Count 12 be **denied** [Docket No. 84];

      7.  Defendant  (1) Martin Basurto-Esquivel's Motion to Suppress Evidence Derived from Search and Seizure be **denied** [Docket No. 92];

      8.  Defendant (2) Martin Basurto, Jr.'s Motion to Suppress Evidence be **denied** [Docket No. 101];

      9.  Defendant (2) Martin Basurto, Jr.'s Motion to Suppress Evidence Obtained as a Result of Search and Seizure be **denied** [Docket No. 102];

      10.  Defendant (2) Martin Basurto, Jr.'s Motion to Suppress Statements, Admissions, and Answers be **denied** [Docket No. 103];

      11.  Defendant (2) Martin Basurto, Jr.'s Motion for Severance of Counts and Defendants be **denied** [Docket No. 112]; and

      12.  Defendant (2) Martin Basurto, Jr.'s Motion for Suppression of Evidence Derived from Wiretaps be **denied** [Docket No. 113].

Dated:    January 18, 2011

                        s/Arthur J. Boylan
                        Arthur J. Boylan
                        United States Chief Magistrate Judge

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before February 1, 2011.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within ten days of receipt of the Report.